# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:13CR00010-032 |
| v. | **OPINION AND ORDER** |
| TEDDY RAY HAMMONDS, | By: James P. Jones |
| Defendant. | United States District Judge |

*Randy Ramseyer, Assistant United States Attorney, and Ajay J. Alexander, Special Assistant United States Attorney, Abingdon, Virginia, for United States; William L. Ricker, Greenville, Tennessee, for Defendant.*

The defendant has pleaded guilty to conspiring to utter, with the intent to defraud, false financial instruments represented to be actual financial instruments issued under the authority of an organization which operates in or the activities of which affect interstate commerce, in violation of 18 U.S.C.A. § 514(a)(2) (West 2000) and 18 U.S.C.A. § 371 (West 2000). In connection with his sentencing, the question before the court is the amount of restitution to be imposed.

The conspiracy is alleged by the government to include at least 72 persons, all of whom are named defendants in this case. The majority of the defendants have entered into plea agreements with the government. The facts of the conspiracy are straight forward. In November and December of 2012, hundreds of false checks were cashed, or attempted to be cashed, at Wal-Mart stores in this

judicial district and the adjoining state of Tennessee. These checks were counterfeit Comdata Comcheks. Comcheks are a product of Comdata Network, Inc., a Tennessee company, and are used primarily by trucking companies to assist their truck drivers in accessing needed funds while traveling. As has been described, the normal and legitimate procedures for the use of these checks are that

> Comdata issues a "security password" to a subscribing trucking company. When a company needs to transfer money to a driver, it contacts Comdata, identifies itself using the password, and authorizes the particular transfer of funds. Comdata then issues an "electronic express code" and authorization to transfer the money. The company tells the driver the code and amount of money authorized. The driver picks up Comcheks at participating businesses (usually truck stops); fills in the code, amount, and payee (usually the driver); activates the Comchek by contacting Comdata and providing the serial number of the Comchek, the code number, and the amount; and then cashes the Comchek, which is treated like a personal check. The merchant cashing the check must first call Comdata to obtain authorization, to confirm that the check has been activated, before cashing the check.

*United States v. Tanksley,* No. 93-6346, 1994 WL 502659, at *1 (6th Cir. Sept. 14, 1994) (unpublished); *see also United States v. Stafford*, 136 F.3d 1109, 1111 (7th Cir. 1998) (explaining Comchek system).

As a result of accepting the false checks uttered by members of this conspiracy, Wal-Mart has suffered a monetary loss of $90,158.42. Most of the defendants participated by cashing only a few of the checks accepted by Wal-Mart. Defendant Hammons, for example, cashed only four checks on a single occasion, for a total loss of $921.65. Like most of the other defendants, he turned the money

over to one of the leaders of the conspiracy, and received in turn only a small payment from the proceeds.

The court is required to impose restitution in this case, pursuant to the Mandatory Victims Restitution Act ("MVRA"), *see* 18 U.S.C.A. § 3663A(a)(1) (West 2000). Because the offense of conviction is a conspiracy, each member is responsible for paying back all losses, "'not only those resulting from the defendant's individual actions but also others caused by the conspiracy itself.'" *United States v. Newsome*, 322 F.3d 328, 341 (4th Cir. 2003) (quoting *United States v. Laney*, 189 F.3d 954, 965 (9th Cir. 1999)); *see United States v. Plumley*, 993 F.2d 1140, 1142 n.2 (4th Cir. 1993) ("[A] criminal defendant who participates in a conspiracy is liable in restitution for all losses flowing from that conspiracy.").

Even if it were required to be shown that the losses suffered from the counterfeit checks cashed on other occasions by the defendant's coconspirators were reasonably foreseeable to the defendant, I find adequate proof of that fact in this case.[1] The nature of the scheme itself supports the proposition that each defendant would reasonably believe that there were numerous other participants

---

[1] "Foreseeability" may be relevant in determining the appropriate offense level under the Sentencing Guidelines, *see* U.S. Sentencing Guideline Manual § 1B1.3(a)(1)(B) (2012) (defining relevant conduct in jointly undertaken criminal activity as "all reasonably foreseeable acts and omissions of others"), and thus may be different for each coconspirator. But the determination of loss for guideline purposes and for restitution purposes present different questions. *See Newsome*, 322 F.3d at 338, 340-42 (upholding restitution order in amount of victim's full loss, even though loss for guideline purposes was less because of defendant's limited temporal involvement in conspiracy).

cashing similar false checks. Many of the checks were cashed by groups of defendants arriving at a particular Wal-Mart store at the same time, as shown by the store's surveillance cameras. Many of the defendants gave statements to authorities in which they reported that they had been enlisted into the conspiracy by others. The scheme lasted over only a relatively brief period of time, so that there is no likelihood that some of the defendants had time or occasion to actively withdraw from the conspiracy. The execution of the fraud was simple, showing its ability to be easily repeated by others. Finally, the total amount of loss to Wal-Mart is not so large that any of the conspirators would not understand that it was a probable result of their joint scheme.

Nevertheless, any harsh result caused by applying the total loss to each conspirator may be mitigated in two ways under the MVRA. First, the manner of payment must be based upon the individual defendant's ability to pay, and secondly, the court in its discretion may apportion the total loss among coconspirators to reflect their level of contribution to the loss and their economic circumstances. *See* 18 U.S.C.A. § 3664(f), (h) (West 2000); *Newsome*, 322 F.3d at 341.

In defendant Hammond's case, I find it appropriate in my discretion to limit his restitution obligation to the face amount of the checks that he himself cashed and to require him to pay that amount in installments, without interest, as a

condition of his supervision. Hammond was not a leader of the scheme and profited very little from his crime. He has little assets and little expectation of income above his minimum needs.

It is so **ORDERED**.

ENTER: June 5, 2013

/s/  James P. Jones
United States District Judge